IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHNS HOPKINS FEDERAL CREDIT UNION, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-09-2009 |
| CUMIS INSURANCE SOCIETY, INC., | * | |
| | * | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Johns Hopkins Federal Credit Union ("JHFCU" or "Plaintiff") seeks coverage under a bond issued by Defendant Cumis Insurance Society, Inc. ("Cumis" or "Defendant") for funds transfer requests that JHFCU processed between September and October 2008. JHFCU filed this action on July 30, 2009, based on this Court's diversity jurisdiction under 28 U.S.C. § 1332. JHFCU seeks a declaratory judgment that it is entitled to coverage under the bond (Count I), damages in the amount of the claim JHFCU submitted for coverage (Count II), and damages resulting from Cumis's alleged bad faith denial of the claim (Count III). Currently pending before this Court is Defendant Cumis's Motion to Dismiss Count III of JHFCU's Complaint. Cumis contends that Maryland law, specifically Md. Code Ann., Cts. & Jud. Proc. § 3-1701 (the "good faith statute"), does not recognize a private cause of action for bad faith conduct in this case. Also pending is Plaintiff JHFCU's Motion for Leave to File a Surreply. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, JHFCU's Motion for Leave to File a Surreply (Paper No. 9) is GRANTED and Cumis's Motion to Dismiss Count III (Paper No. 6) is GRANTED.

1

BACKGROUND

This Court reviews the facts relating to this claim in the light most favorable to the plaintiff.  *See, e.g., Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

On May 28, 2008, Cumis Insurance Society, Inc., a leading financial services provider to credit unions, issued an insurance bond to Johns Hopkins Federal Credit Union.  Compl. ¶ 2, 5. On September 9, 2008, JHFCU received a wire transfer request purportedly from Dr. Neil A. Martinson, a long-time JHFCU accountholder working at a hospital in South Africa.  *Id*. ¶ 8. The wire requested that $115,550 be transferred from Dr. Martinson's account into a bank in Beirut, South Africa, so that he could obtain medical supplies for his hospital.  *Id*.  Under JHFCU's account agreement, Dr. Martinson acknowledged that:

> You and the Credit Union agree that the following specified security procedures represent a commercially reasonable method of providing security against unauthorized payment orders:
>
> a. only individuals named in Your application for membership shall issue [a] wire transfer request to Us; and
> b. we reserve the right to telephonically contact any individual named in Your application for membership for the purpose of confirming a transfer request, regardless of amount, although We have no obligation to do so.  If We cannot obtain a confirmation satisfactory to us, then We reserve the right to refuse to honor any wire transfer request.
>
> We have no responsibility to verify the identity of any party identifying themselves as an individual authorized to receive a telephonic confirmation of any wire transfer request, other than to verify that the name given by any such party corresponds to a party named in Your application for membership.

*Id*. ¶ 7.  Accordingly, JHFCU verified a wire by requesting and receiving via fax a copy of Dr. Martinson's passport and an authentication stamp that appeared to be from the South African police.  *Id*. ¶ 8.  JHFCU subsequently completed the transfer.  *Id*.  From September 21, 2008 through October 21, 2008, JHFCU received four more wire transfer requests purportedly from Dr. Martinson asking that sums of money in amounts ranging from $16,550 to $67,950 be

transferred out of his account. *Id.* Each request included the same passport photo, signatures and explanation that the money was to buy hospital equipment. *Id.* ¶ 9 – 12. At some point during this time, a JHFCU employee verified the wire request by telephone and spoke with an individual purporting to be Dr. Martinson. *Id.* ¶ 11. This individual confirmed the request and that the money was to pay for medical supplies for Dr. Martinson's hospital. *Id.* ¶ 11. Ultimately, $252,500 total was transferred out of Dr. Martinson's account. *Id.* ¶ 19.

At some point thereafter, Dr. Martinson contacted JHFCU, told the credit union that he did not make any of the transfer requests and demanded that the funds be replaced in his account. *Id.* ¶ 13. JHFCU restored the money and submitted a claim to Cumis seeking reimbursement for the losses under its insurance bond. *Id.* ¶ 14. JHFCU claimed coverage under the following two provisions of the bond agreement:

> 1. Coverage for losses "resulting directly from fraudulent instruction through email, telefacsimile or telephonic means received by [JHFCU] from a person who purports to be [a JHFCU] member . . . provided:
>
>> a. [JHFCU] performed a 'callback verification' with respect to the instruction; or
>> b. [JHFCU] followed a commercially reasonable security procedure set forth in a written funds transfer agreement, signed by the member that governs the transaction and instruction."
>
> 2. Coverage for losses resulting directly from the "forgery" or alteration of an "instrument" which includes a "withdrawal order."

*Id.* ¶ 14. The single loss of liability limit of the policy is $4,500,000. Paper No. 6 at Ex. 1, p. 2. Cumis denied JHFCU's bond claim for Dr. Martinson's losses, claiming that the losses were not covered because JHFCU did not follow "commercially reasonable security procedures." Compl. ¶ 17. Cumis explained that it considered JHFCU to have no wire policy, and found fault with JHFCU's handling of its relationship with Dr. Martinson and repayment of his losses. *Id.* ¶ 17, 18. JHFCU counters that Cumis previously audited JHFCU's wire handling procedures and

3

never questioned whether its security procedures were "commercially reasonable" nor identified any issues with JHFCU's accountholder agreement. *Id*. ¶ 16. JHFCU alleges that the total loss it has suffered from these fraudulent wire transfers is $252,500, plus the costs of litigation and counsel fees. *Id*. ¶ 19.

In its Complaint, JHFCU seeks in Count I a declaratory judgment that it is entitled to coverage under the bond, and in Count II damages in the amount of the claim JHFCU submitted for coverage. In Count III, JHFCU seeks damages, including attorneys' fees and court costs, resulting from Cumis's alleged bad faith denial of the claim. Currently pending before this Court is Defendant Cumis's Motion to Dismiss Count III of JHFCU's Complaint.

## STANDARD OF REVIEW

There is no dispute that the parties are citizens of different states and that the initial matter in controversy exceeds $75,000. Thus, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Even though this Court possesses jurisdiction, however, federal courts have discretion to decline to exercise jurisdiction over a declaratory judgment action pursuant to the Federal Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. Specifically, the Act provides in part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added). In this case, there is no question that this declaratory judgment action will serve to declare the rights of the respective parties and resolve the controversy giving rise to the proceeding. Accordingly, this Court will exercise jurisdiction over this declaratory judgment action. *Id.; see also Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (finding that 28 U.S.C. § 2201 gives district courts the discretionary

authority to grant relief "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.") (internal quotation marks and citation omitted).

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted, and therefore a Rule 12(b)(6) motion tests the legal sufficiency of a complaint.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 U.S. 1937, 1950 (2009). Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)). Thus, even though Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* The Supreme Court has recently explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 U.S. at 1949. On a spectrum, the plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Id.* Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At bottom, the court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## ANALYSIS

In Counts I and II of its Complaint, Plaintiff JHFCU asks that this court enter a declaratory judgment that it is entitled to coverage under the bond at issue, and seeks damages of $252,500, the amount of the claim it submitted for coverage. At this time, however, this Court need only address Count III of JHFCU's Complaint, which asserts that Cumis denied their insurance claim in bad faith and seeks damages, court costs and attorneys' fees.[1]

JHFCU identifies two provisions in the bond agreement through which it contends its claim is payable under the Cumis insurance policy and alleges in Count III of its Complaint that Cumis has refused to pay this claim in bad faith in violation of Maryland law. Under Maryland's good faith statute, which became effective October 1, 2007, a plaintiff may recover expenses and litigation costs in an action "[t]o determine the coverage that exists under [an] insurance policy," if the plaintiff can show that "the insurer failed to act in good faith" with respect to the insurance

---

[1] This Court has granted Plaintiff JHFCU's Motion for Leave to File a Surreply (Paper No. 9) and has considered their Surreply.

claim. Md. Code Ann., Cts. & Jud. Proc. § 3-1701(d)(1)-(2). The Maryland Insurance Code defines three separate categories of insurance policies: property insurance, casualty insurance and surety insurance. Md. Code. Ann., Ins. § 1-101. Cumis argues in its Motion to Dismiss Count III that JHFCU cannot rely upon this good faith statute because it is expressly limited to "first-party claims under property and casualty insurance policies," and this bond is covered by the third category of surety insurance policies, which includes "insurance that guarantees the execution of bonds." Md. Code Ann., Cts. & Jud. Proc. § 3-1701(b); Md. Code. Ann., Ins. § 1-101(oo).

JHFCU argues that it may maintain a cause of action against Cumis under the good faith statute because the section that explains the timing of filing an action under the statute makes reference to claims that can be brought under a "commercial insurance policy." Md. Code Ann., Cts. & Jud. Proc. § 3-1701(c)(2)(iii). The Maryland Insurance Code defines both "commercial insurance" and "personal insurance" to include "property insurance or casualty insurance." Md. Ins. Code § 27-601. However, JHFCU emphasizes that the Maryland Insurance Code's definition of "personal insurance" expressly excludes "surety insurance," whereas the definition of "commercial insurance" excludes several different types of policies, but *not* surety insurance. *Id.* Thus, since surety insurance policies are not specifically excluded from the definition of "commercial insurance," as they are from "personal insurance," they must be included.[2] Accordingly, JHFCU argues that since the good faith statute makes reference to claims under

---

[2] JHFCU takes issue with Cumis's conclusion in its Reply (Paper No. 8) that the agreement at issue was a surety insurance policy when Cumis solely referenced case law supporting general insurance liability in its Motion to Dismiss (Paper No. 6). Nevertheless, JHFCU does not appear to challenge that this policy is a surety insurance policy, and repeatedly refers to the insurance "bond" Cumis issued to JHFCU in its Complaint. *See, e.g.,* Compl. ¶ 5. Given the descriptions of the three categories of insurance in Maryland Code § 27-601, it is hard to imagine a colorable argument that the bond in this case is not covered by a surety insurance policy.

commercial insurance policies in § 3-1701(c)(2)(iii), good faith claims brought under surety insurance policies must be valid.

Interpreting § 3-1701(c)(2)(iii) of the good faith statute in such a way that would bring surety insurance under its purview would render the section of the statute limiting its scope to property and casualty insurance policies, § 3-1701(b), meaningless. It has always been "a cardinal principle of statutory construction that [a court] must 'give effect, if possible, to every clause and word of a statute.'" *See Williams v. Taylor,* 529 U.S. 362, 404 (2000) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)). Thus, given the clear language in § 3-1701(b) of the good faith statute expressly limiting its scope to property and casualty insurance policies, JHFCU cannot bring a cause of action for failure to act in good faith against Cumis under the bond agreement. Consequently, Count III of the Complaint must be dismissed.[3]

JHFCU also asserts that *Atlantic Contracting & Material Co. v. Ulico Cas. Co*., 380 Md. 285 (Md. 2004), establishes that Maryland courts recognize that sureties have obligations of good faith and fair dealing in handling claims. *Atlantic* is distinguishable from this case. In *Atlantic*, the Maryland Court of Appeals did not analyze the good faith statute since it did not become law until three years later. Instead, the Court analyzed the parties' indemnity agreement, which specifically included a clause stating that the surety "shall be entitled to reimbursement for any disbursements made by it in good faith." *Id*. at 302. Thus, the Court's acceptance of a good faith cause of action in *Atlantic* was warranted because the parties' contract explicitly agreed that reimbursements would depend upon whether the surety was acting in good faith. Furthermore, in *Atlantic*, the question was whether the *surety* was entitled to indemnity under the agreement. By contrast, in this case, JHFCU does not contend that the parties have an indemnity agreement

---

[3] Cumis does not move to dismiss Count I, which seeks a declaratory judgment that JHFCU is entitled to coverage under the bond, or Count II, which alleges damages in the amount of the claim JHFCU submitted for coverage.

containing a good faith clause. Instead, JHFCU's cause of action is dependent upon the application of Maryland's good faith statute, which, as explained, does not apply to surety insurance policies. Finally, here it is the *principal* who is looking for reimbursement from the surety, not the reverse. As a result, *Atlantic* has no bearing on the case at bar.

## CONCLUSION

For the reasons stated above, JHFCU's Motion for Leave to File a Surreply (Paper No. 9) is GRANTED, and Cumis's Motions to Dismiss Count III (Paper No. 6) is GRANTED.

A separate Order follows.


Dated: March 3, 2010                    /s/_____
                                        Richard D. Bennett
                                        United States District Judge